ORIGINAL

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
ELINOR COLBOURN
Senior Trial Attorney
Environmental Crimes Section
P.O. Box 23985
L'Enfant Plaza Station
Washington, D.C. 20026-3985

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP - 9 2010

at____o'clock and_____min._____M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 10-00614 |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA |
| | ) | AGREEMENT |
| vs. | ) | |
| | ) | Date: September 9, 2010 |
| COUNTY OF KAUAI | ) | Time: 3:15 p.m. |
| | ) | Hon. Leslie E. Kobayashi |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED

STATES OF AMERICA, by its attorney and the Assistant Attorney General for the Environment

and Natural Resources Division, and Defendant COUNTY OF KAUAI and its attorney, Alfred

B. Castillo, Jr., Esq., have agreed upon the following:

1

1.      Defendant agrees to be charged with a single misdemeanor count of violating the Migratory Bird Treaty Act ("MBTA"), Title 16, United States Code, Sections 703 and 707(a).

2.      Defendant has read the charge against it contained in the Information, and that charge has been fully explained to it by its attorney.

3.      Defendant fully understands the nature and elements of the crime with which it has been charged.

4.      Defendant will enter a voluntary plea of guilty to the Information charging it with violating the MBTA, Title 16, United States Code, Sections 703 and 707(a).

5.      Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.      Defendant enters this plea because it is in fact guilty of violating the MBTA as charged and agrees that its plea is voluntary and not the result of force or threats.

7.      Defendant understands that the penalties for the offense to which it is pleading guilty include up to 5 years probation and a fine of up to $15,000. In addition, the Court must impose a $50 special assessment as to each count to which Defendant is pleading guilty. Defendant agrees to pay $50 for the count to which it is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

2

8.     Defendant admits the following facts and agrees that they are not a detailed recitation of all facts involved in this matter, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty:

a.     On August 3, 2005, and September 16, 2005, as well as on other dates thereafter, Defendant was notified both orally and in writing by the U.S. Fish and Wildlife Service and/or others that its facilities, particularly lighting at the facilities, were taking protected seabirds, including the threatened Newell's Shearwater (*Puffinus auricularis newelli*). Defendant was further advised that these takings violate both the MBTA and the Endangered Species Act ("ESA"), Title 16, United States Code, Sections 1538, 1540. Defendant was informed that it could prepare and submit a Habitat Conservation Plan ("HCP") to apply for a permit that would authorize certain takings incidental to the operation of its facilities. Finally, Defendant was given advice over a number of years that it could minimize takings by, among other things, shielding its lights.

b.     As of August 16, 2010, the County of Kauai had not shielded any of its lights nor prepared an HCP nor applied for a permit authorizing takings of any protected seabirds.

c.     During each of the past five years some Newell's shearwaters have been killed, or otherwise taken, by lighting at facilities operated by Defendant. Such takings of Newell's shearwaters by Defendant include, but are not limited to, at least one protected Newell's shearwater taken on each of the following dates: October 14, 2005; October 19, 2005; October 28, 2005; October 18, 2006; October 20, 2006; October 21, 2006; October 18, 2007; October 19, 2007, and; October 23, 2009.

3

9.     Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which Defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement, including the stipulated conditions of probation, will not undermine the statutory purposes of sentencing.  The Agreement to plead guilty to the violation of the MBTA reflects the essence of Defendant's conduct.

10.    Prior to sentencing, as community service aimed at the harm caused by the takings that have occurred just in the past five years, Defendant shall donate $180,000 to the National Fish and Wildlife Foundation (an entity created by statute for the purpose of, among other things, receiving and managing such funds) to be placed in an account for use to benefit and increase the populations of Newell's shearwaters on the Island of Kauai.  Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.  Defendant will make a good faith effort to have the Foundation provide to the Court, with copies to the United States, an annual report of contributions to and expenditures from this account during the period of probation.

11.    Prior to sentencing, as community service to reduce the harm from takings that are anticipated to occur within the term of probation and prior to Defendant's obtaining an incidental take permit, Defendant shall donate $30,000 to the Kauai Humane Society, conditioned upon the Society using the funds to augment its Save Our Shearwater program, a program that for years has been the primary vehicle used to minimize takings of seabirds on Kauai by rescuing, rehabilitating and releasing downed birds.  Defendant acknowledges that

4

failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option. Defendant will make a good faith effort to have the Society provide to the Court, with copies to the United States, by December 31, 2011, a report documenting the Society's expenditure of those funds.

12.     Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

a.      The parties stipulate to the facts as outlined in Paragraph 8, above.

b.      Offense level stipulations – none, the U.S. Sentencing Guidelines are not applicable.

c.      Sentencing stipulations – the parties will recommend a sentence of a fine of $15,000 and 30 months probation with the following special conditions of probation:

i.      Pursuant to the mandatory condition of probation set forth at 18 U.S.C. § 3563(a)(1) (defendant shall not commit another Federal, State or local crime during the term of probation), to avoid further violations during the period of probation, Defendant shall undertake the corrective measures set forth in Attachment A hereto, on the time schedule indicated therein.

ii.     Pursuant to 18 U.S.C. § 3563(a)(1) and (b)(22), Defendant agrees to create and maintain records of dead and injured or sick birds protected by the ESA and/or MBTA that are found on its property or at its recreational facilities, and to notify the U.S.

5

Fish and Wildlife Service via telephone or email of any such mortalities, injuries or sickness within 24 hours of becoming aware of the event, including the apparent circumstances.

        d.     The parties stipulate that Defendant may seek early termination of the period of probation only if Defendant obtains an incidental take permit before the term of probation expired and was in compliance with all conditions of probation.

        13.     If the Court accepts this plea agreement, including the stipulations contained therein regarding sentencing, the Environmental Crimes Section of the U.S. Department of Justice, Environment and Natural Resources Division, will decline to prosecute Defendant for any additional criminal violations committed up until the date of execution of this plea agreement, involving migratory bird deaths related to the operation of lights at its facilities.

        14.     If, in the sole judgment of the United States, Defendant has complied with the terms of this plea agreement, including proceeding pursuant to Attachment A in good faith, has provided timely notification to the U.S. Fish and Wildlife Service of any such known or reasonably anticipated takings of migratory and/or ESA-protected birds, acts in good faith and in consultation with the U.S. Fish and Wildlife Service to correct or minimize those conditions identified as resulting in any such takings, and otherwise complies with its conditions of probation, the Environmental Crimes Section would agree, for a period of 30 months or until the island-wide HCP is completed, whichever comes first, to exercise its discretionary authority not to prosecute Defendant for any additional taking of migratory bird deaths that may nevertheless occur during its period of probation related to the operation of lights at its facilities.

15.     The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

16.     Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties identify the following facts that are in dispute for the purpose of sentencing of Defendant in connection with this matter:  None.

17.     Defendant is aware that it has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a).  Defendant knowingly waives the right to appeal, except as indicated in subparagraph "a" below, any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the government in this plea agreement.

a.      Defendant also waives its right to challenge its sentence or the manner in which it was determined in any collateral attack, except that it may make such a challenge based on a claim of ineffective assistance of counsel.

b.      The government retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

18.     Defendant understands that the District Court in imposing sentence may consider the provisions of the Sentencing Guidelines.  Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof,

notwithstanding any representations or predictions from any source, although it is the understanding of the parties to this agreement that the Guidelines are not applicable.

19.     Defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.  The parties hereby stipulate that they believe a presentence report is unnecessary.  Defendant understands that the Court will not accept an agreement unless the Court determines that the charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

20.     Defendant understands that by pleading guilty it surrenders certain rights, including the following:

a.     If Defendant persisted in a plea of not guilty to the charges against it, it would have the right to a public and speedy trial.  The trial could be either a jury trial or a trial by a judge sitting without a jury.  However, the parties do not believe that Defendant has a right to a jury trial for the charge set forth in the Information.

b.     If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random.  Defendant and its attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.  The jury would be instructed that Defendant is presumed innocent, and that it could not convict it unless, after hearing all the evidence, it was persuaded of its guilt beyond a reasonable doubt.

8

c.    If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of Defendant's guilt beyond a reasonable doubt.

d.    At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against Defendant.  Defendant would be able to confront those prosecution witnesses and its attorney would be able to cross-examine them.  In turn, Defendant could present witnesses and other evidence on its own behalf.  If the witnesses for Defendant would not appear voluntarily, it could require their attendance through the subpoena power of the Court.

21.    Defendant understands that by pleading guilty, it is waiving all of the rights set forth in the preceding paragraph.  Defendant's attorney has explained those rights to it, and the consequences of the waiver of those rights.

22.    Defendant and its attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

23.    Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.  The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

24.    Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding

the charges against it, related matters, and any matters in aggravation or mitigation relevant to

the issues involved in sentencing.

      25.     Defendant agrees that it will fully cooperate with the United States.


      DATED: September 9 , 2010, at Honolulu, Hawaii,


      AGREED:


IGNACIA S. MORENO                COUNTY OF KAUAI through
Assistant Attorney General
Environment and Natural Res. Div.
United States Department of Justice

Alfred B. Castillo, Jr., Esq.,
County Attorney
Attorney for Defendant

ELINOR COLBOURN DC#430428
Senior Trial Attorney
Environmental Crimes Section
Environment and Natural Res. Div.
United States Department of Justice

ATTACHMENT A

1. Lighting at Football Facilities Operated by the County of Kauai

    a.  No stadium lighting shall be on at any County-operated football facility, including but not limited to Vidinha, Hanapepe, and Kapaa, in the evenings between September 19, 2010 and December 15, 2010, and between September 15 and December 15 of 2011 and 2012, except as described below.

    b.  Whenever lights are on at night at any County-operated football facility between September 15 and December 15 of any year during the period of probation, the County will monitor, or cause to be monitored, the facility grounds.  The monitoring shall be conducted by a group of at least 4 persons trained by U.S. Fish and Wildlife Service-approved personnel to identify and handle seabirds.  Such monitoring shall include: documentation of the number, species, timing, height and flight patterns of observed seabirds; the number and species of seabirds that appear to have been grounded or downed; the number of apparently grounded seabirds that were searched for and in fact found to be grounded or downed; the number of apparently grounded or downed seabirds that were searched for and not found; the number of apparently grounded or downed seabirds that were not searched for with an explanation as to why a search was not conducted; the number of seabirds found grounded or downed that did not correspond to an observed apparent grounding or downing; and information on the condition of any recovered grounded or downed seabirds.  Such monitoring shall further include, immediately upon conclusion of any game and before the lights are turned off, a search of the facility grounds for any grounded or downed seabirds.  For all such monitoring, the County will maintain records of the location, times, dates, and personnel (including volunteers utilized) involved, as well as the location, condition, identification, in situ photographs, and fate of each recovered bird.  Any seabird encountered during such monitoring will be reported by the County via telephone or email to the U.S. Fish and Wildlife Service, Office of Law Enforcement within 48 hours.  Unless otherwise directed by the U.S. Fish and Wildlife Service, Office of Law Enforcement, all retrieved seabirds will be transferred to the Save Our Shearwater ("SOS") program in conformance with recommendations of that program, along with all associated location and photographic data for each bird.

    c.  Whenever lights are on at night at any County-operated football facility for a publicly attended event, including but not limited to football games, held between September 15 and December 15 of any year during the period of probation, the County shall ensure that mutually agreeable public service announcements regarding seabirds are delivered over the loudspeakers during any such event.

    d.  The following football games of the 2010 season shall not be scheduled for a time that would require the use of the stadium lights: September 25, October 2, October 9, October 16, October 23, October 30, and November 6.  The football game scheduled for September 25, 2010, may be scheduled for a time that would require the use of the stadium lights, in recognition that the game will coincide with a full moon and is early in the season, thus minimizing any anticipated takings, provided that the lights not be turned on prior to 8:00 p.m. to coincide with moonrise on that date. The games on October 2 and October 16 and October 23, 2010, also could be removed from this prohibition if the County schedules each of the final games for those dates to start

(i.e. opening kickoff) at least 30 minutes prior to official sunset. However, if the County elects to schedule games on any or all of these four dates (to include September 25, 2010) that would require the use of unshielded stadium lights, the County must establish an escrow account, no later than November 15, 2010, in the amount of $60,000 to be used in the event that takes resulting in death or serious injury of protected seabirds occur. If, in the sole judgment of the United States, such an event occurs on any of the September 25, October 2, October 16 or October 23 dates, for each such event, $10,000 will be transferred from the escrow account to an account established at the National Fish and Wildlife Foundation for use in mitigating takings of seabirds on Kauai. Should the number of such takings equal or exceed six on September 25, the games on October 2, 16 and 23 may not occur at night. Should the total number of such takings equal or exceed six after the September 25 and October 2 games, the October 16 and 23 games may not occur at night. Should the total number of such takings equal or exceed six after the September 25, October 2 and October 16 games, the October 23 game may not occur at night. At any such night game described in this subparagraph, all lights shall be turned off within one hour after the end of the game. Any funds remaining in the escrow account as of January 30, 2011, will be promptly returned to the County.

e.   All football facility lights, including but not limited to those at the Vidinha, Hanapepe and Kapaa facilities, will be shielded for the protection of seabirds prior to the start of the 2011 and 2012 football season. The County of Kauai shall inform the U.S. Fish and Wildlife Service as soon as the shielding is complete at each stadium.

f.   No later than June 1 of 2011 and 2012 the County of Kauai shall complete and provide to the U.S. Fish and Wildlife Service a report documenting the results of its monitoring and other observations from the previous football season, and a proposal regarding the dates and times of football games for the upcoming season, with due consideration of the information obtained from the previous season(s), and an explanation of how takings are anticipated to be avoided.

g.   No football games held between September 15 and December 15 in the 2011 and 2012 seasons shall be scheduled for a time that would require the use of the stadium lights. However, up to four games could be removed from this prohibition if the stadium lights were shielded for the protection of the birds prior to those games, and the County schedules each of the selected night games to start (i.e. opening kickoff) at least 30 minutes prior to official sunset, and the prior year's data establishes that no more than two of the specified types of take events for that year (for 2010 data, takes that result in death or serious injury; for 2011 takes that involve downings or groundings) are anticipated for any individual game and no more than four such events total for the four games proposed, and the County establishes an escrow account by September 1 of each season in the amount of $60,000 in the event that takes that involve the downing of a protected seabird occur. If, in the sole judgment of the United States, such an event occurs on any of the selected night game dates, for each such event $10,000 will be transferred from the escrow account to an account established at the National Fish and Wildlife Foundation for use in mitigating takings of seabirds on Kauai. Should the escrow fund exhaust prior to all of the selected night games being played, the remaining games from the time the fund is exhausted may not occur at night. Any funds remaining in the account as of January 30, 2012 and January 30, 2013, respectively, will be promptly returned to the County.

2

2. Lighting at Other County Facilities

   a. Inventory and Audit of Lights and Timers

      i.     Prior to September 1, 2010, the County shall provide to the U.S. Fish and Wildlife Service's Office of Law Enforcement a complete inventory of outdoor lights at facilities owned, operated or maintained by the County. The County shall specify for each light on the inventory, either individually or as part of a group with identical attributes: (1) the location and type of the light fixture; (2) the uses of the light fixture; (3) whether or not the light is considered essential for security or human safety (4) whether the light is essential for sports or other purposes between September 15 and December 15 of each year covered by the period of probation; (5) whether the light is shielded or not (a light shall be deemed shielded if there is no escape of light from the fixture above the horizontal plane of the bottom of the fixture); and (6) whether the light is controlled by a timer, a motion sensor, or a manually operated switch. For all essential unshielded lights, the inventory will include a recommendation of whether (i.e., the light is anticipated not to result in takings of protected seabirds and adequate support is set forth for this anticipation) or how (ie. shield, timer, motion sensor, switch control) to manage each fixture.

      ii.    Prior to September 15, 2010, the County and the U.S. Fish and Wildlife Service's Office of Law Enforcement and Office of Ecological Services shall together conduct an audit of all lights identified on the inventory as being controlled by a timer or a motion sensor or being anticipated to not result in takings, to verify the functionality of the timer or sensor or the validity of the assessment that takings are not anticipated.

      iii.   Prior to October 1, 2010, the County shall provide to the U.S. Fish and Wildlife Service's Office of Law Enforcement a chart of the inventoried lights, setting forth for each light or similar group of lights, how and when the County minimized or plans to minimize or avoid takings of seabirds due to those lights, and how the County will monitor the results of the minimization actions for lights that will be in use at any time between September 15 and December 15 of each year (that is, all shielded lights) covered by the period of probation. Each light must (1) be shielded and have a monitoring plan mutually agreeable to the U.S. Fish and Wildlife Service or (2) actions must be taken to ensure that the light(s) are not used between September 15 and December 15 of each year or (3) have received concurrence from the U.S. Fish and Wildlife Service that it is not anticipated to result in takings of protected seabirds. The dates set forth for the various minimization and monitoring actions shall be no later than September 1, 2011, with at least one third of the actions being scheduled to be completed by a date prior to December 31, 2010.

      iv.   No later than September 1, 2011 and September 1, 2012, the County shall establish an escrow account in the amount of $100,000, or an amount equal to the number of takings recorded at such facilities in the previous

3

year multiplied by $10,000, whichever is less.  In the event that, in the sole judgment of the United States, takes that involve the downing of a protected seabird occur at any of the facilities between September 15 and December 15 of the given year, for each such taking $10,000 will be transferred from the escrow account to an account established at the National Fish and Wildlife Foundation for use in mitigating takings of seabirds on Kauai.  Should the escrow fund exhaust prior to the end of the season, lights at facilities found to have such takings will be turned out for the remainder of the season, or additional funds (in increments of $30,000) will be added to the escrow account in an amount anticipated to cover any further such takings by the County, at the County's discretion.  Any funds remaining in the account as of January 30, 2012 and January 30, 2013, respectively, will be promptly returned to the County.

    v.    No later than October 1, 2010, the County shall provide to the U.S. Fish and Wildlife's Office of Law Enforcement estimates of the hourly energy cost and usage to operate the lights at each facility (to include football stadiums).

    b.    Outreach/signage.

The County shall conduct public outreach or provide signage in a mutually agreeable form and manner, at all County facilities including near any light control devices accessible by the public and in association with all facility use approvals or authorizations, from September 1 through December 15 of each year covered by the period of probation.  The outreach shall communicate, at minimum, the cultural and ecological importance of Kauai's unique seabirds and articulate the actions taken by the County to protect and conserve Kauai's seabirds.

    c.    Personnel training

All County elected officials, appointees, supervisors and department heads will attend a mutually agreeable training program no later than September 1, 2011, that will cover information on seabirds found on Kauai, including Newell's shearwaters and other species affected by lighting on Kauai.  The training will include information about: light pollution; the species biology and identification; the importance of the species to Hawaiian culture and ecology and to Kauai's fishermen; pertinent State and federal laws and regulations; staff responsibilities; procedures for avoiding and minimizing light attraction; an overview of Kauai's Save Our Shearwaters program; and procedures for safely handling and aiding downed seabirds.  The County will maintain a record of each elected official, appointee, supervisor and department head who has attended the training program, and make that list available to the U.S. Fish and Wildlife Service and/or the U.S. Department of Justice, upon written request. All other County personnel shall receive training no later than September 1, 2011, from the County Administration on seabirds found on Kauai, including Newell's shearwaters and other species affected by lighting on Kauai.  The information will include information about: light pollution; the species biology and identification; the importance of the species to Hawaiian culture and ecology and to Kauai's fishermen; pertinent State and federal laws and regulations; staff responsibilities; procedures for avoiding and minimizing light attraction; an overview of Kauai's Save Our Shearwaters program; and procedures for safely handling and aiding downed seabirds.  The County will verify under penalty of perjury to the Probation Officer no later than September 1, 2011, that all such training described above has been accomplished.

4   Court
law
9/9/10